**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SCOTT STEVEN SCILAGYI,

       Petitioner,

   v.

B. M. CASH,

       Respondent.

Case No. 1:11-cv-01309-SKO-HC

ORDER DENYING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOCS. 1, 10, 12)

ORDER DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on August 17, 2011, and on behalf of Respondent on March 1, 2012.

Pending before the Court is the first amended petition, consisting of the petition filed on August 8, 2011, and a first amended petition filed on August 25, 2011, which was deemed by the

Court to be a supplement to the initial petition.  Respondent filed
an answer to the petition on October 7, 2011.  Although the time for
filing a traverse has passed, no traverse was filed.[1]

I.  Jurisdiction

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v.
Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002,
1004 (9th Cir. 1999).

The challenged judgment was rendered by the Tulare County
Superior Court (TCSC), which is located within the territorial
jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a),
(d).  Petitioner claims that in the course of the proceedings
resulting in his conviction, his constitutional rights were
violated.  Accordingly, the Court has subject matter jurisdiction
pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a
district court to entertain a petition for a writ of habeas corpus
by a person in custody pursuant to the judgment of a state court
only on the ground that the custody is in violation of the
Constitution, laws, or treaties of the United States.  Williams v.
Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. -
, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Warden B. M. Cash,
who, pursuant to the judgment, has custody of Petitioner at his

---

[1]  In an apparent response to this Court's order to Respondent to submit further
documentation and thus complete the state court record submitted to this Court,
Petitioner submitted medical records from prison from 2008 and 2011 through 2014
as well as various documents from the trial court proceedings.  Petitioner has not
shown that the prison records were before the state courts, and thus they will be
disregarded.

institution of confinement.  (Doc. 13, 1:22-23.)  Petitioner has
thus named as a respondent a person who has custody of the
Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of
the Rules Governing Section 2254 Cases in the United States District
Courts (Habeas Rules).  See <u>Stanley v. California Supreme Court</u>, 21
F.3d 359, 360 (9th Cir. 1994).

Thus, the Court concludes that it has jurisdiction over the
person of the Respondent.

II.  <u>Procedural Summary</u>

On April 16, 2010, Petitioner entered a no contest plea to
making criminal threats in violation of Cal. Pen. Code § 422 with
two prior convictions for serious or violent felonies pursuant to
Cal. Pen. Code §§ 667(a)(1) and 1170.12.  A prior conviction was
stricken, and it was understood that Petitioner would face a
sentence of twelve years and eight months (five years for each prior
conviction plus two times the mitigated term for the substantive
offense).  (Ans., doc. 13 [exh. A], 14-23.)  A sentence of twelve
years and eight months was imposed on August 2, 2010.  (Ans., doc.
13 [exh. C], 42-43, 50.)

On April 21, 2011, Petitioner filed a petition for writ of
habeas corpus in the TCSC requesting post-judgment habeas
proceedings copies of the transcripts of a sentencing hearing held
on June 16, 2010.  (LD[2] 1, pet., 1, 3.)  Petitioner stated he was
seeking to challenge his plea and sentence based on violations of
his Sixth and Fourteenth Amendment rights "to my competency and my
counsel's ineffective representation."  (<u>Id.</u> at 3.)  On April 26,
2011, the TCSC denied the petition, rejecting Petitioner's claims of

---

[2] "LD" refers to documents lodged by Respondent in support of the answer.

3

the ineffective assistance of counsel and violations of his rights.

(LD 1, ruling, at 1.)   Regarding Petitioner's claim concerning his

plea, the TCSC stated as follows:

> The petitioner entered into a plea agreement wherein
> the petitioner was given an indicated sentence of TWELVE
> (12) years in state prison.
>
> The court reviewed all issues regarding any mental health
> issues and the petitioner entered into a waiver of his
> trial rights on that issue.
>
> The petitioner was fully advised of his exposure, his
> constitutional rights and his right to discuss the
> matter further with his attorney prior to the taking of
> his plea.  There was a clear and concise exchange between
> the court and the petitioner.  It is clear from the record
> that the petitioner was lucid and fully understood the
> consequences of his plea negotiation and agreement.
>
> The petitioner received the benefit of his bargain and got
> exactly the sentence he bargained for.

(LD 1, ruling at 1.)

On March 14, 2011, Petitioner filed a habeas petition in the

California Supreme Court (CSC) alleging he had lacked the mental

capacity required under the federal Constitution to enter his no

contest plea, and his defense counsel's assistance was inadequate.

He alleged he did not understand the entire proceeding when he

signed the plea agreement, and he was not advised by anyone of the

consequences of his state plea on his federal probation, which had

resulted in collateral consequences.  Petitioner further alleged he

showed signs of mental instability because he attempted suicide by

driving his car into a tree on June 10, 2010, after learning of the

potential sentence he would face.  He contended that at the

4

sentencing hearing held on June 16, 2010, he bashed his head through the courtroom well in front of the sentencing judge, district attorney, and defense counsel.  Petitioner alleged he was taken to jail and brought back to court on August 2, 2010, without psychiatric evaluation or treatment, and was sentenced without being referred to mental competency hearings or examined by a psychiatrist.  Instead, he simply waited over one month, and defense counsel failed to object to the court's failure to refer him for mental competency or psychiatric interviews or to request the required mental review.

Petitioner raised the following claims: 1) his guilty plea was without due process and was not voluntarily or intelligently made in violation of the Fourteenth Amendment; 2) he was denied the effective assistance of counsel when counsel failed to investigate Petitioner's competence despite knowledge that Petitioner was under a doctor's care for mental illness, advise the court of Petitioner's condition, and file the necessary motions to determine Petitioner's competence; 3) his right to a fair and impartial trial was denied when he was deprived of due process under the Fourteenth Amendment; and 4) the trial court failed to make adequate inquiry to determine Petitioner's competence and to hold a pre-plea competency hearing due to doubt of Petitioner's competence.

///

///

The CSC denied the petition on August 24, 2011, as follows:

The petition for writ of habeas corpus is denied.  (See People v. Duvall (1995) 9 Cal.4th 464, 474; In re Swain (1949) 34 Cal.2d 300, 304.)

(LD 2, ruling.)

III.   The Trial Court Proceedings

A.   Summary of the Facts relating to the Offense

It was stipulated at the time Petitioner entered his plea that the preliminary hearing and the police reports provided the factual basis for the plea.  (Doc. 13, 20:2-10.)  The report of the probation officer received by the TCSC on July 27, 2010, reflects that Visalia Police Department reports indicated that on March 5, 2009, at about 6:31 p.m., the victim, E.M., reported to officers dispatched to her residence that Petitioner, who was on probation for a firearms offense, threatened to kill her and her boyfriend after she informed Petitioner, whom she had dated for about a week and one-half, that she was going to break up with him.  Two friends listened to E.M. and Petitioner's phone conversation in which Petitioner swore at her, threatened to kill her if he found her with someone else, and said he was coming over to handle it and did not care if he went back to prison; he then called back saying that he was on his way to show her what he was all about.  (Doc. 13, 29:5-20.)

During E.M.'s conversation with the police officer, Petitioner drove to the victim's street with two friends in his truck.  Upon

being contacted by officers, Petitioner admitted he had told the victim he was going to kill her and that he was on probation for a firearms charge.  He stated that he did not intend to harm the victim, but only to speak with her.  (Id. at 29-30.)

When interviewed later, Petitioner explained the incident as a result of his drinking (an empty eighteen-pack of beer was found in his truck) and his failure to take his medications (Trazodone, Tegretol, and Abilify) after being released from federal prison in December 2008 due to inability to obtain the expensive medication, which had been administered to him after he had been diagnosed with bi-polar disorder with schizophrenic features when he was in custody two and one-half years earlier.  (Id. at 30-31.)

B.  Summary of the Proceedings in the Trial Court

The reporter's transcript of the change of plea hearing on April 16, 2010, in the TCSC (doc. 13, 14-26) indicates that Petitioner, who was out of custody, appeared with his counsel.  The plea negotiation involved a no contest plea by Petitioner to count 1 and his admitting two prior serious felony convictions in exchange for a negotiated sentence of twelve years and eight months if he cooperated with the probation department and appeared in two months on the date set for sentencing.  (Doc. 13, 14-16.).  The failure to cooperate and appear would result in a sentence to an aggravated term of sixteen years.  (Id.)

Counsel stated that the agreement had been explained to Petitioner, and Petitioner confirmed he had no questions about it. Petitioner also confirmed that he understood that if he was on probation or parole the plea could result in his probation or parole

being violated.  He confirmed his understanding of various
consequences (immigration, mandatory parole, and the possible
failure of the sentencing court to accept the agreement), except for
the possibility of restitution.  He stated he did not know about
that, and a discussion was held off the record after his counsel
asked a question; Petitioner then confirmed he understood and had no
questions.  (Id. at 16-18.)

Petitioner was asked if he had been threatened or promised
anything to induce the plea, and if he had used any medication,
alcohol, or drugs that would affect his ability to understand what
they were doing, and he replied, "No, ma'am."  He likewise confirmed
he had had sufficient time to discuss the case with this attorney
and was satisfied with his counsel.  (Id. at 18-19.)

Counsel stated that Petitioner's motivation to plead was his
desire to avoid the serious ramifications of losing at trial.
Counsel also confirmed she had had sufficient time to discuss the
case with Petitioner; had advised him of the charges, consequences,
and possible defenses; and believed he fully understood all those
matters.  (Doc. 13, 19-21.)

The court took the plea and found that Petitioner had knowingly
and intelligently waived all his constitutional rights and had
willingly entered into the plea of no contest.  (Id. at 23.)

The reporter's transcript of the sentencing hearing held on
August 2, 2010, reflects that at the commencement of the hearing,
Petitioner's counsel informed the court that Petitioner wanted the
court to review his mental health evaluation.  (Ans., exh. C, doc.
13, 43.)  The evaluation was attached to the probation report and
was considered by the sentencing court.  (Id. at 45-46.)

8

Attached to the probation report were two letters from the Petitioner's mother (one to the judge and one to the probation officer) that were intended for the sentencing court.[3]   The letters indicated that Petitioner was a dramatically different person without his medications, which he unsuccessfully tried to obtain after his supply from prison had been consumed.   Petitioner's mother described the events of June 15, 2010, several days before his initially set sentencing hearing, when Petitioner expressed a desire to end it and had an intense discussion with family members. Further, at the hearing on June 18, 2010, Petitioner had been very upset because the judge had denied Petitioner's motion to discharge counsel.   When he left the courtroom after the judge remanded him, Petitioner blurted out that it was a conflict of interest because Petitioner knew the judge's stepson and had been to the stepson's home; the judge said that she did not know Petitioner.   (Doc. 20, 9.)   Petitioner's mother asserted in the letter that Petitioner did not understand any of the court process or litigation, had the mental state of a twelve-year-old, and was confused and lacked understanding of the severity of the criminal threats he had made. (Id. at 10.)

The mental health evaluation consisted of handwritten notes of an hour-long psychiatric evaluation performed by Marina C. Vea,

---

[3]   Respondent objects that the letters were irrelevant and were not considered by the sentencing court.  However, Respondent also states that the trial court may not have determined the admissibility of the letters as they were harmful to Petitioner because they demonstrated that at the time of the sentencing hearing, Petitioner had sufficient understanding and capacity to attempt to remove his appointed counsel and to argue that the judge had a conflict of interest due to Petitioner's contact with the judge's stepson.
    The letters were attached to the probation report considered by the sentencing court, and thus they are summarized in this order.

M.D., dated July 17, 2010, a couple of weeks before the final sentencing hearing. Petitioner reported having first been diagnosed as bipolar in 2008 and having been treated without side-effects with medications Abilify and Trazodone and then "CB2" or "CBZ" to aid sleep and reduce agitation. Petitioner had no history of psychiatric hospitalization or inpatient treatment; he had been diagnosed with ADHD when seven years old and had been treated with Ritalin until age fifteen or sixteen. Petitioner reported that he had been out of medications for two months and was easily angered, suffered increased anxiety and agitation, heard voices, and suffered hyperactivity, racing thoughts, and poor deep sleep since being incarcerated in June. (Supp. rept. submitted lodged on or about April 28, 2014, p. 2.) He was very frightened of going to state prison. (Id.) The diagnosis was bipolar disorder with psychotic features; ADHD as a child; and polysubstance (drugs and alcohol) abuse and dependence, with a global assessment of functioning (GAF) of 50 to 55. The plan was to medicate Petitioner with Abilify for psychosis, CB2 or CBZ for mood stabilization, and Trazodone for sleep. (Id. at 4.)

The evaluation reflects Petitioner's ability to give the examiner a comprehensive medical and social history. Petitioner reported he had graduated from college, was a contractor, and last worked the day before he went to court on June 18, 2010; and the mental status exam reflected cooperative attitude, intact cognition, fair insight, and impaired judgment. (Id. at 3.) Notes of Dr. Vea's follow-up examination a week later on July 24, 2010, reflect that after a week of medication, Petitioner continued to complain of hearing voices and inadequate sleep but was much calmer and less

10

anxious; his thought process was linear, and he was oriented and had some insight.  There had been some improvement, and medications were to be continued.  (Id. at 5.)

Petitioner told the probation officer he was a certified welder who repaired vehicles at the time of his arrest.  (Doc. 13, 34.)

At the sentencing hearing, Petitioner waived his right to privacy concerning his mental evaluation.  His counsel stated it would be beneficial to attach the mental health evaluation to ensure that Petitioner continued to receive the appropriate medication in custody.  (Doc. 13, 45.)  Petitioner's counsel stated that Petitioner was "still of the opinion that he wasn't in his – he wasn't in a good state that day due to the fact that he hadn't received his medicine when he left prison," and then counsel submitted the matter.  Petitioner recalled that as part of the plea agreement, he was required to meet with probation and appear for sentencing to avoid a sixteen-year sentence.  (Id. at 47.)  The court reminded Petitioner that he had been facing a sentence of twenty-five years to life without a plea agreement.  (Id. at 49.)

Appended to the petition is a declaration of Petitioner's mother dated February 15, 2011, stating that Petitioner had been under tremendous stress and depression over his arrest of March 2009, and although trial counsel had been informed of Petitioner's bipolar and psychopathic disorder, she never informed the court or moved to commence mental health proceedings.  Further, Petitioner continued to be depressed after contemplating suicide on June 16, 2010, and when he appeared in court for sentencing he became irrational and bashed his head into the courtroom wall and then stated to the judge, "I know you and your step kids—I've been to

1   your house," which was followed by his remand into custody.  (Doc.

2   1, 20-21.)

3        In his declaration dated July 14, 2011, Petitioner alleges

4   counsel knew and failed to act with respect to his mental condition;

5   he also alleges that at his sentencing hearing he was experiencing

6   psychic trauma, became disillusioned, had tremors and headaches, and

7   "out of nowhere bashed [his] head through the courtroom wall."

8   (Doc. 1, 22.)  Petitioner remained in county jail for about two

9   weeks without treatment until he requested to be seen by a mental

10  health practitioner.  Throughout this period no one addressed

11  Petitioner's need for competency proceedings.  (Id. at 22-23.)

12       IV.  Competence to Plead Guilty

13       Petitioner argues that he suffered a violation of his right to

14  due process of law because his plea was involuntary and

15  unintelligent due to his lack of capacity to enter into the plea.

16            A.  Standard of Decision and Scope of Review

17       Title 28 U.S.C. § 2254 provides in pertinent part:

18       (d) An application for a writ of habeas corpus on
         behalf of a person in custody pursuant to the
19
         judgment of a State court shall not be granted
20       with respect to any claim that was adjudicated
         on the merits in State court proceedings unless
21       the adjudication of the claim—
22
         (1) resulted in a decision that was contrary to,
23       or involved an unreasonable application of, clearly
         established Federal law, as determined by the
24       Supreme Court of the United States; or
25
         (2) resulted in a decision that was based on an
26       unreasonable determination of the facts in light
         of the evidence presented in the State court
27       proceeding.
28
                                  12

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. at 412.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).  A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state

13

court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.

To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, -- U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400.

Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

B.  Analysis

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the TCSC issued an unpublished, reasoned opinion affirming the judgment, concluding that the trial court had reviewed all issues regarding mental health, Petitioner had been fully advised, Petitioner engaged in a clear and concise exchange with the court, the record demonstrated Petitioner was lucid and fully understood the consequences of his plea negotiations and agreement, and Petitioner validly waived his rights.  (LD 1.)  Petitioner then raised the issue of his competence in the CSC, which denied his

15

claims because of inadequate pleading with citations to <u>People v. Duvall</u> 9 Cal.4th 464, 474 (1995) and <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949).

Here, the TCSC reached the merits of Petitioner's claim regarding his plea.  The CSC then denied the claim based on a procedural defect signaled by citations to <u>Duvall</u> and <u>Swain</u>, a type of ruling that has been characterized as the functional equivalent of a demurrer resulting in a dismissal without prejudice.  See <u>Cross v. Sisto</u>, 676 F.3d 1172, 1176-78 (9th Cir. 2012).  This Court may look through the unexplained decision of the CSC to the decision of the TCSC to apply § 2254(d)(1).  If the Court instead were to give independent review to the CSC's decision, analysis of whether the state court decision was objectively unreasonable based on an independent review of the record would result in the same decision with respect to entitlement to relief.[4]

---

[4]   If the claim was adjudicated on the merits, pursuant to § 2254(d)(1), this Court will grant relief only if the Petitioner shows that the state court decision was contrary to, or an unreasonable application of, clearly established federal law.  Where the state court decides an issue on the merits, but its decision is unaccompanied by an explanation, a habeas petitioner's burden is to show that here was no reasonable basis for the state court to deny relief.  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784. In such circumstances, this Court should perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  <u>Medley v. Runnels</u>, 506 F.3d 857, 863 n.3 (9th Cir. 2007), <u>cert. denied</u>, 552 U.S. 1316 (2008); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  Independent review is not the equivalent of <u>de novo</u> review; rather, the Court must still defer to the state court's ultimate decision.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).
   However, if the claim was not decided on the merits, then this Court must review it <u>de novo</u>.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

1    Respondent contends Petitioner is not entitled to relief on his

2  claim that he was incompetent to plead guilty because the California

3  Supreme Court's denial indicated that Petitioner had failed to

4  document his claims adequately, and thus had not exhausted state

5  court remedies.[5]  (Doc. 13, 6.)   However, Respondent also

6  acknowledges that despite an apparent failure to exhaust, this Court

7  may deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

8  Accordingly, the Court proceeds pursuant to § 2254(b)(2).

9    A criminal defendant may not plead guilty unless the plea is

10  entered competently and intelligently.  Godinez v. Moran, 509 U.S.

11  389, 396 (1993).  The standard of competence to plead guilty

12  required by the Due Process Clause is the same as the standard for

13  standing trial, namely, whether the defendant has sufficient present

14  ability to consult with his lawyer with a reasonable degree of

15  rational understanding, and a rational as well as factual

16  understanding of the proceedings against him.  Id. at 399.

17  Competence is the mental capacity or ability to understand the

18  nature and object of the proceedings against him and to assist

19  counsel.  Id. at 401 n.12, 402.

20    The failure to observe procedures adequate to protect a

21  defendant's right not to be tried or convicted while incompetent to

22  stand trial deprives him of his due process right to a fair trial.

23  Pate v. Robinson, 383 U.S. 375, 385 (1966).  Due process requires a

24  state court to hold a hearing where substantial evidence before the

25  court indicates the need for further inquiry into the defendant's

---

26  [5] People v. Duvall, 9 Cal.4th 464, 474 (1995) holds that a claim is not properly
27  alleged on habeas corpus without particular allegations of fact and supporting
   documentation, and In re Swain, 34 Cal.2d 300, 304 (1949) dismissed a claim
28  without prejudice to refiling with a particularized statement of facts supporting
   the claim.

competence.  Drope v. Missouri, 420 U.S. 162, 180 (1975).  Where the evidence before the trial court raises a bona fide doubt as to a defendant's competence to stand trial, a judge on his own motion must conduct an evidentiary competence hearing.  Pate v. Robinson, 383 U.S. at 385; Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011) (citing Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

The determination of whether further inquiry into competence is required depends upon the circumstances in each case.  Drope v. Missouri, 420 U.S. at 180.  Relevant circumstances include evidence of a defendant's irrational behavior, the defendant's demeanor in trial court proceedings, any prior medical opinion on competence to stand trial, id.; the defendant's participation in court proceedings, such as testimony and colloquies with the court, Stanley v. Cullen, 633 F.3d at 861; any clinical or psychiatric evidence, id.; memory problems and ingestion of drugs with side-effects, McMurtrey v. Ryan, 539 F.3d 1112 (9th Cir. 2008); and counsel's assurances to the court regarding the defendant's competence, Stanley v. Cullen, 633 F.3d at 861.

Here, the Petitioner had a history of mental illness and treatment, and it appears that Petitioner was not on his medication at the time he entered his plea.  However, mental health records did not demonstrate any deficit of cognition or lack of factual or rational understanding of the legal proceedings.  Further, Petitioner engaged in irrational behavior in the course of the trial court proceedings when he realized he was imminently facing a substantial state prison sentence.

Despite Petitioner's emotional state later in the proceedings, the record affirmatively reflects Petitioner's participation in

18

colloquies with the court at the time the plea was entered, which showed a rational as well as a factual understanding of the nature and object of the proceedings against him.  Further, Petitioner's counsel confirmed there had been adequate communication concerning the matters essential to an intelligent and voluntary plea, and counsel opined that Petitioner was proceeding voluntarily and intelligently.  Indeed, the trial court expressly found that there was a clear and concise exchange between the court and the petitioner, it was clear from the record that Petitioner was lucid and fully understood the consequences of his plea negotiation and agreement, and that Petitioner received the benefit of his bargain and got the exact, bargained-for sentence.  Even when Petitioner expressed his distress by bashing his head into a wall, Petitioner knew of the nature of his counsel's representation and undertook proceedings to obtain different counsel, and he also raised an issue of a conflict of interest with the judge presiding over the case.

The state court's decision was supported by the evidence before the court.  Although the evidence indicated that Petitioner suffered some mental illness, the evidence before the trial court did not raise a bona fide doubt as to the Petitioner's competence to stand trial or enter a plea.  The evidence warranted a conclusion that Petitioner was not only competent to plead, but also had validly waived his rights and had voluntarily and intelligently entered the plea.  The failure to hold a competency hearing did not deny Petitioner his right to due process of law.

V.   Ineffective Assistance of Counsel

Petitioner argues that he suffered the ineffective assistance of counsel when counsel failed to move to initiate competency

proceedings despite knowledge of Petitioner's mental illness, failed to move to recuse the judge despite knowledge of Petitioner's association with the judge's stepchildren, and failed to consult with federal authorities regarding possible concurrent sentences before Petitioner's entry of the plea.  Petitioner alleges that although he was out on bail, he only met with his appointed counsel twice before entry of the plea.  Petitioner alleges generally that he informed counsel that because of his mental illness, he did not understand any of the proceedings against him or the interrogation and investigation.  Petitioner argues that if counsel had not failed in her representation of him, it was reasonably probable that Petitioner would not have entered a plea and would have instead insisted on a trial.

Preliminarily, the Court notes that Respondent again contends that Petitioner failed to exhaust this claim in the state courts because of the CSC's denial of his habeas petition with citations to Duvall and Swain.  However, again, the Court will proceed to consider the claim pursuant to § 2254(b).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

Specifically, a petitioner may attack the voluntary and intelligent character of a guilty plea by showing that he received ineffective assistance from counsel in connection with the entry of the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a habeas petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58–59 (1985) (two-part test of Strickland v. Washington applies to challenges to guilty pleas based on the ineffective assistance of counsel); Missouri v. Frye, – U.S. – , 132 S.Ct. 1399, 1405 (2012) (reaffirming that Hill is properly applied to claims of ineffective assistance of counsel in the context of acceptance of a plea bargain); Padilla v. Kentucky, – U.S. – , 130 S.Ct. 1473, 1485 (2010) (to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances).

Here, the TCSC ruled that Petitioner had not established the ineffective assistance of counsel. (LD 1, ruling at 2.) Based on the foregoing analysis, there was no substantial evidence indicating a need to inquire into the defendant's competence to enter a plea. There was no expert evidence indicating Petitioner was not competent to stand trial at the time of the plea or at any particular point in the proceedings in the trial court. Instead, the examining doctor opined in July 2010 that Petitioner's GAF was 55 to 50, an assessment that indicates generally moderate symptoms and does not

support or compel the conclusion that Petitioner was incompetent then or at any previous time.[6]  The record reflects that counsel discussed the charges, defenses, and consequences of the plea with Petitioner, and that counsel further believed Petitioner understood the agreement and voluntarily and intelligently waived his rights and entered into the agreement.  Petitioner participated in the proceedings and engaged in meaningful discussions with counsel and the court, thereby demonstrating a rational and factual understanding of the proceedings and an ability to assist counsel.

In sum, there was no basis for counsel to attempt to initiate proceedings to inquire into and determine the competence of Petitioner to stand trial or plead.  Therefore, counsel's failure to initiate such proceedings did not constitute conduct that fell below the standard of reasonably competent professional assistance. The failure to make a motion which would not have been successful or was otherwise futile does not constitute ineffective assistance of counsel.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).

The record forecloses to a substantial extent Petitioner's claims that counsel engaged in substandard assistance by not advising Petitioner of the consequences of his plea on his federal parole or probation and/or negotiating for Petitioner to serve his

_____

[6] A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning that is used to plan treatment and to measure the impact of treatment as well as to predict its outcome. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-TR).  A GAF of 55 (i.e., within the range of 51 through 60), indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF of 50 (i.e., in the range of 41-50) indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34.

additional federal time concurrently.  At the time the plea was entered, the trial court asked Petitioner if he understood that if he was on probation or parole that his plea could result in his probation or parole being violated; Petitioner responded, "Yes, ma'am."  (Doc. 13, 16.)

Further, it is undetermined whether counsel's failure to advise a pleading defendant of a collateral consequence of a plea, other than deportation, can constitute a basis for a claim of the ineffective assistance of counsel.  The Supreme Court has specifically reserved the question of whether an attorney's failure correctly to advise a defendant regarding "collateral" as distinct from "direct" consequences of a guilty plea can ordinarily be the basis for a claim of ineffective assistance of counsel.  See Padilla v. Kentucky, 559 U.S. at 364-65 (the Court had never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance required under Strickland, and indicating that the appropriateness of the distinction was a question that the Court need not consider in that case because of the unique, severe, and essentially automatic nature of deportation as a consequence of a plea); Hill v. Lockhart, 474 U.S. at 60 (finding it unnecessary to determine whether there might be circumstances under which erroneous advice by counsel as to parole eligibility might be deemed constitutionally ineffective assistance of counsel).  Petitioner has not shown any clearly established federal law requiring counsel specifically to advise pleading defendants regarding collateral parole consequences.

In any event, the consequence suffered by Petitioner for his federal parole violation was an additional fifteen months of federal

time.  Petitioner has not demonstrated that any failure of advice
was prejudicial.  Petitioner has not set forth any defense to the
charge or other factual basis to demonstrate that if he had not
entered a plea of no contest, it was reasonably probable he would
have gone to trial.  Petitioner admitted making the criminal threats
to kill the victim but maintained he did not mean them and did not
believe them to be serious, despite his own history of having been
found unfit as a juvenile and thus criminally responsible as an
adult for assault with a deadly weapon (attacking a boy with his own
skateboard and breaking his jaw) and later having been convicted of
the federal offense of being a felon in possession of a firearm.
(Doc. 13, 35.)  Further, in exchange for his plea, Petitioner
received the benefit of the court's striking two prior convictions,
imposing the mitigated term for the threats, and giving Petitioner
the opportunity to remain out of custody pending sentencing on
condition that he cooperate with probation in anticipation of
sentencing.  Petitioner has not shown that it was probable that he
would have proceeded to trial or would have received a lower
sentence if he had proceeded to trial and had been convicted.

   In sum, Petitioner has not shown a reasonable probability that,
but for counsel's errors, the petitioner would not have pleaded
guilty and would have insisted on going to trial.  Accordingly, the
Court will deny Petitioner's claim of the ineffective assistance of
counsel.

VI.  Certificate of Appealability

   Unless a circuit justice or judge issues a certificate of
appealability, an appeal may not be taken to the Court of Appeals
from the final order in a habeas proceeding in which the detention

24

complained of arises out of process issued by a state court.  28
U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336
(2003).  A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant.
Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant
makes a substantial showing of the denial of a constitutional right.
§ 2253(c)(2).  Under this standard, a petitioner must show that
reasonable jurists could debate whether the petition should have
been resolved in a different manner or that the issues presented
were adequate to deserve encouragement to proceed further.  Miller-
El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S.
473, 484 (2000)).  A certificate should issue if the Petitioner
shows that jurists of reason would find it debatable whether: (1)
the petition states a valid claim of the denial of a constitutional
right, and (2) the district court was correct in any procedural
ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the
claims in the habeas petition, generally assesses their merits, and
determines whether the resolution was debatable among jurists of
reason or wrong.  Id.  An applicant must show more than an absence
of frivolity or the existence of mere good faith; however, the
applicant need not show that the appeal will succeed.  Miller-El v.
Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate
whether the petition should have been resolved in a different
manner.  Petitioner has not made a substantial showing of the denial
of a constitutional right.

1    Accordingly, the Court will decline to issue a certificate of

2 appealability.

3    VII.  <u>Disposition</u>

4    In accordance with the foregoing analysis, it is ORDERED that:

5    1)  The petition for writ of habeas corpus is DENIED; and

6    2)  The Clerk is DIRECTED to enter judgment for Respondent; and

7    3)  The Court DECLINES to issue a certificate of appealability.

8

9

10 IT IS SO ORDERED.

11 Dated:   __July 27, 2014__                    _____/s/ **Sheila K. Oberto**_____
                                               UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28